\*Smith *v*. Parsons.        [236

State insolvent laws discharging debtors from the debt upon surrendering up all their property, valid as to contracts made between citizens of the same state within its jurisdiction after the law was enacted and in force.

This cause was decided by Judges Pease, Hitchcock, and Burnet, in Ross county, November, 1822.   The whole case is fully stated in the opinion of the court, by Judge Burnet.

Opinion of the court, by Judge Burnet:

This cause is presented for the opinion of the court, on the following agreed case:

"The suit is brought on promissory notes, executed by defendant when a resident and citizen of the State of Maryland. The defendant pleads his discharge under the bankrupt law of that state. At the time the notes were executed, both plaintiff and defendant were citizens of Maryland. The bankrupt laws were enacted prior to the execution of the notes. The defendant is a regular certificated bankrupt, or insolvent, under the laws of Maryland, which are a full discharge of all debts returned. This debt was returned. All defendant's property was duly assigned to trustees in Maryland."

Before an attempt is made to investigate the principles presented by this case, it is necessary to state that this court recognizes the constitutional right of the Supreme Court of the United States to expound the constitution, and to settle its import, wherever a doubt arises; and that it is our duty implicitly to receive their construction as a rule of decision, in all cases in which it applies. That tribunal having decided that a state has authority to pass a bankrupt law, provided such law does not impair the obligation of contracts within the meaning of the constitution, and provided there be no act of Congress in force to establish a uniform system of bankruptcy, conflicting with such law, our inquiry may be limited to the single question, whether the law of Maryland did or did not, in the sense of the constitution, impair the obligation of the contract on which the present suit is founded.

This case is clearly distinguishable from that of Sturges *v.* Crowninshield, and can not be considered as determined by it. In that case, the notes were given prior to the passage of the law. In this case, the law was in force at the time the notes were executed. By that case it was decided that a legislative act can not affect a 237] contract *made before its execution, so as to discharge a party from its obligation, which would have been the consequence had the plea been sustained. In this case it is to be decided whether a law in force at the time of the execution of a contract, can operate on that contract, so as to relieve a party from the performance of its stipulations. The case of McMillan *v.* McNeil is confidently relied on as settling this question; but that case appears to be as clearly distinguishable from this as the case of Sturges *v.* Crowninshield, as will appear by a comparison of facts. In that case the parties were both residents of the State of South Carolina, where the cause of action arose. There was no bankrupt

law in force in that state. The defendant, Mr. McMillan, re-
moved to Louisiana, where he obtained the benefit of the *cessio
bonorum.* He had also obtained a certificate under the bankrupt
law of England ; and, being sued in the District Court for the Dis-
trict of Louisiana, pleaded those certificates in bar of the action.
The contract was made under the laws of one state ; the discharge
was obtained under the laws of a different state. The law of
South Carolina governed the contract—the laws of Great Britain
and of Louisiana were relied on to discharge it. In the present
case, the parties were residents of Maryland ; the contract was
made, and the certificate was obtained, under a law of that state,
in force before and at the date of the contract. From this com-
parison, it appears that the cases are distinguishable in several
important facts. Yet if it were cearly discernible, that the Su-
preme Court intended to embrace within the scope of their opin-
ion, a case situate precisely like the present, this court would re-
ceive it as their guide ; they would not feel themselves at liberty
to investigate its correctness, or to question its authority, but
would at once render judgment in favor of the plaintiff. But such
does not appear, from the opinion delivered by the chief justice,
to have been their intention. He decides " that the case was not
distinguishable in principle from the preceding case of Sturges *v.*
Crowninshield ; that the circumstance of the state law, under
which the debt was attempted to be discharged, having been
passed before the debt was contracted, made no difference in the
application of the principle." The reason is not stated, but we
can be at no loss to discover it  A law of Louisiana, or a statute
of Great Britain, could have no influence on a contract made in
Charleston, under the laws of South Carolina. The parties can not
be presumed to have had a knowledge of their existence, much
less to have agreed that they should form a rule for the construc-
tion and government of their contract. *They could not, [238
therefore, under any circumstances, affect it, or the rights of the
parties under it; and consequently it made no difference whether
they were passed before or after the contract, for in neither case
could they influence it. Well, then, might it be said that the cir-
cumstances of the law having been passed before the debt was
contracted, made no difference. This is understood as applying
strictly to the case then before the court; and being so applied,
who can question its correctness ? If the law, under no circum-

stances could bear on the contract, the fact of its prior existence could give it no other or greater force than would be ascribed to it, had it been enacted after the date of the contracts; and consequently, the distinguishing fact relied on in this case, could not in that case make a difference in the application of the principle.

From this view of the subject, the question presented in the case before us seems to be open, and the court at liberty to examine and decide what effect the bankrupt law of Maryland has on the notes on which the present suit is brought.

As was observed in the argument, contracts are either expressed or implied, or part expressed and part implied. A provision created by law for the government or construction of all contracts made under it, need not be recited or expressly referred to in a contract; it will be considered as implied, and have the same force and effect as if it were set out.   Should a contract contain a clause, declaring it null and void on the happening of a particular event, as the insolvency of either party, would such a clause be void, or would it be considered as impairing the obligation of the contract? If not, would the same provision in a law, made applicable to all subsequent contracts, so as to form a part of them, be considered as impairing their obligation? It is believed not.   Many cases might be cited in which the law forms a material part of the contract, although neither recited nor even referred to; as when one person engages to labor for another, without a promise or stipulation of payment.  If payment be refused and suit be brought, courts do not hesitate to say that by the law in force when the engagement was made, the laborer was entitled to the value of his labor—that the contract must be construed by the law—that the law must be taken as forming a part of the contract—and, therefore, that the plaintiff shall recover.  In such a case, the obligation to pay is entirely created by the law, and the recovery is had on the ground that the law forms a part of the contract; for on no other principle would the defendant be held liable.

Although a state legislature can not pass laws impairing contracts, *yet they may regulate them, prescribe their form, their effect, and the mode of their discharge, and every contract is supposed to be made with reference to those laws.   Thus if a contract be made for the payment of money, without designating the time of payment, the law says it shall be payable on demand. If it fixes the day of payment, but is silent on the subject of in-

terest, interest shall attach from the day the money becomes due. In these, and in many other cases, the obligation is created by law. In other instances it is discharged by law; as, if a contract be, in whole or in part, contrary to a statute, it is void *in toto*. If the condition of a bond becomes impossible, by the act of God, by the act of the party, or by operation of law, the bond is void. If a contract be founded in usury, or given for a gambling consideration, or for a consideration *malum in se*, or if it be contrary to good policy, it is void. In all these cases, the intention of the parties is controlled and restrained by the law; yet it is not considered that the contracts are unconstitutionally impaired. On the same principles, may not the bankrupt law of Maryland be considered as controlling the obligation of the contract on which the present suit is founded.

It is admitted that the states have not given up the entire power of legislating on the subject of contracts. They may, for instance, pass laws preventing usury, and fixing the interest of money. Should such a law enact that a lender may receive from a borrower six per cent. interest and no more, and should an after contract contain an express promise to pay ten per cent., such contract, although voluntarily made for the payment of a specific sum, would be void in part, and, in many of the states, the obligation of the contract would be entirely destroyed, and the obligor released from the payment of both principal and interest. Independent of statute law, every person has the same right to contract for ten per cent. interest, that he has for the payment of the principal sum; and if the law limiting interest at six per cent., can absolve him from the payment of the excess, and even of the principal itself, is not the obligation of the contract as clearly affected, as it is in the case before us? It is admitted that such a law, applied to contracts made prior to its enactment, would be unconstitutional; but not so when applied to subsequent contracts. Why, it may be asked, does this distinction exist, and why is not this class of laws considered void on constitutional grounds? They evidently affect contracts voluntarily made on subjects about which the parties had a right to contract. One reason only can be assigned. The legislature has a right, by law, *to regu- [240. late contracts, to determine their effect, and point out the mode of their discharge. These laws are applied to all subsequent engagements, and fix the rights of the parties at the very instant the

contract is closed, so that the contract, in its inception, receives an impress from the law, and the effect of the law being co-existent with the contract, can never be said to alter or impair it. It continues what it was at its commencement; and it is more correct to say that the law has in part made the contract, than that it has changed it. If an obligor be entirely discharged from a contract, by the operation of a statute against usury, and the constitution be not violated, it would be difficult to assign a reason why that instrument should be violated by a bankrupt law acting prospectively and pointing out a state of things, on the happening of which a contract shall cease to have effect, or shall be considered as discharged. If, however, an attempt should be made to give these laws a retrospective effect, the constitutional objection would arise in all its force; for although the legislature may regulate contracts to be made in future, it can not disturb those previously made, or unsettle rights previously vested; and this is the distinction that ought to determine the character of the law of Maryland. On any other view of the question, the power of the states to legislate on the subject of contracts will be materially impaired; for if it be admitted that a bankrupt law, operating on an after made contract in the manner prescribed and as was understood by the parties, be unconstitutional, or if contracts be not made with reference to existing laws, so as to imply an assent to their provisions, it must follow that statutes of limitation, statutes against usury, gambling, sale of offices, frauds, and perjuries, and the like, must be void, because they impair the obligation of contracts not prohibited by the constitution, and which would have been legally binding had not those statutes been made.

It can not be said that bankrupt laws go further than the statute just mentioned. They require all contracts to contain, by implication at least, a condition that they shall be discharged on the happening of a particular contingency, which would not have affected the contract had there been no statute on the subject. The Supreme Court of the United States decided that the states may legislate on the subject of contracts. They originally possessed that power, and have conferred it on the general government only in part. They, therefore, possess a concurrent power, and may exercise it as freely as the general government. They may pass a bankrupt law, with this qualification, that so far as it conflicts with **241]** *an act of Congress to establish a uniform system of bank-

254

ruptcy, it must yield. But the general government having no law on the subject, there appears to be no restraint on the states. By a power derived from the people, Congress may establish a uniform system of bankruptcy throughout the United States. The states, by a power also derived from the people, may pass bankrupt laws (qualified as above), operating within their respective territories. These powers being received from the same source, and differing only in the extent and limits of their operation, would be considered, at first view, as conferring on each equal rights; and it is the opinion of some intelligent jurists, that when Congress have no law on the subject, the states may legislate to the same extent that Congress have a right to do. But as we only claim for the states the power of discharging, by the operation of their bankrupt laws, contracts entered into subsequently to their passage, and within the state in which the law has effect, and admit that if those laws were applied to pre-existing contracts, or to contracts made in a different state, they would impair their obligation. It is not within our province to examine that opinion.

It is asked if a law releasing a contracting party from the performance of his stipulation be not a law impairing the obligation of contracts, what is the definition of such a law? It may be answered, when a law by which the parties to a contract are not bound, or which can not be considered as forming a part of the contract, or as creating a rule for its construction, is applied in its discharge, it may be said to impair its obligation in the sense of the constitution.

It was contended by counsel that, although the contract between these parties was made with a knowledge of the law of Maryland, it was also made with a knowledge that the law was unconstitutional, and that the contract could not be affected by it. This is drawing a conclusion from premises that take for granted the point in controversy. It is arguing from the contract to the law, and determining the validity of the latter by the apparent intention of the former. When the law in question was enacted, it interfered with no contract, every contract then in existence being placed beyond its operation. As to them, therefore, it was unobjectionable. It had no operation on them prohibited by the constitution. Consequently, persons then about to contract could not know the law as one impairing the obligation of contracts in the

sense of the constitution, but as an act regulating future contracts,. and pointing out a mode by which they might be discharged. If 242] the law, at its inception, *had no improper bearing on contracts, and was free from constitutional objections, the parties to an after contract could not change its nature, and convert it into an unconstitutional act. This would be enabling them to give a new character to an existing statute, and virtually to contract away the power of the legislature. Contracts can not change the character of laws; they are subordinate to them. Instead of determining the validity of the statute by reference to the alleged intention of the parties to the notes in question, we must fix the legal intent of the parties, as well as the nature and extent of the obligation of the notes, by a reference to the statutes. The statute must be tested by the constitution applied to it at the moment it took effect, and with reference to the operation it then might have on rights vested by existing contracts, and if it be found then free from constitutional objection, parties about to contract can not know it to be unconstitutional.

In the case of Melon v. Fitzjames, 1 Bos. & Pul. 142, in which it was determined that a contract made in France should be construed by the laws of that country, and that the defendant was not bound by the mere words of the contract, but might show how it would be considered in France, Justice Rooke says : " If the law of France has said that a person shall not be liable on such a contract, it is the same as if the law of France had been inserted in the contract." The plain import of this language is, that contracts must be expounded according to the laws in force at the time they were made; and that the parties are as much bound by a provision contained in a law, as if that provision had been inserted in, and formed a part of the contract.

On the whole, from the view now taken of the subject, we are led to conclude that the case before us differs materially from the cases of Sturgis v. Crowninshield and McMillan v. McNeil, and that it can not be considered as settled by their authority—that this court, therefore, must decide it according to their own construction of the constitution. That the statute of Maryland, being confined in its operation to after contracts made within that state, does not interfere with the constitution, and that the defendant was, by the operation of that statute, discharged from the payment. of the notes on which the present suit is founded.