Nov. Term, 1831.

Pugh,
v.
Bussel.

*Perry,* for the plaintiffs.

*Rariden,* for the defendants.

---

## PUGH *v.* BUSSEL.

*A.,* having become indebted to *B.* in the state of *Ohio* where they both resided, gave his note to *B.* for the debt dated in 1821. In 1823, the parties being still resident in *Ohio, A.* took the benefit of the insolvent law of that state, and was discharged, so far as respected arrest and imprisonment, from all his debts, that of *B.* among the rest. Afterwards, *A.* removed to this state; and, to an action against him on the note, brought by *C.,* the assignee of *B.,* he pleaded—in discharge of his person from arrest or imprisonment for the debt—his above-mentioned discharge in *Ohio.* *Held,* on general demurrer, that the plea was good.

Until congress exercise the right of passing uniform laws on the subject of bankruptcy, any state may enact a bankrupt law not impairing the obligation of contracts.

A state law merely discharging the person of the debtor from imprisonment, not his after-acquired property, for debts contracted in the state between its citizens, is constitutional,—whether the debt was contracted before or after the passage of the law. But, if the law discharge the debtor's after-acquired property as well as his person, a discharge under it is not valid, unless the creditor make himself a party to the proceedings which lead to the discharge.

A discharge, by a state law, has no operation out of the state over contracts not made and to be carried into effect within the state; nor over the citizens of other states, who do not make themselves parties to the proceedings under the law.

A discharge under an insolvent law, of the person and not of after-acquired property, may be pleaded in discharge of the person from imprisonment; and the judgment

for the plaintiff, if the plea be supported, is, that he recover his debt, &c., to be le-
vied not on the person of the defendant, but only on his property.

ERROR to the *Rush* Circuit Court.—This cause was sub-
mitted to the Court at the *November* term, 1830, when the judg-
ment of the Circuit Court was reversed. Vide the opinion, an-
te, p. 366. A re-hearing was afterwards granted; and, at the
present term, the following opinion in the cause was delivered.

STEVENS, J.—This is an action of debt brought by *Bussel*
against *Pugh* in the *Rush* Circuit Court, on a note made by
*Pugh* on the 11th day of *August*, 1821, to one *John Jackson*, and
by *Jackson* transferred by assignment in writing, on the 16th
day of *December*, 1829, to *Bussel*. *Pugh* pleads, in discharge of
his body from imprisonment or arrest for said debt, a discharge
obtained by him in the county of *Hamilton* and state of *Ohio*,
by the Court of Common Pleas of that county under the insol-
vent laws of that state, on the 18th day of *August*, 1823. The
plea avers the filing of his petition and schedule of debts; the
appointment of trustees, and the surrender of his effects to the
trustees according to law; and that the trustees gave bond and
took upon themselves the office of trustees according to law;
and that such proceedings were duly and legally had upon such
petition and schedule, that the Court of Common Pleas on the
18th day of *August*, 1823, ordered and adjudged "that the per-
son of the said petitioner be henceforth privileged from impri-
sonment, for any debt due and owing by him at the time of fil-
ing his petition." The plea further avers that his discharge
still remains of record in said Court of Common Pleas, unre-
versed and in full force; and makes the proper reference to the
record; and states that the said discharge took place after the
note in question was made, and after it became due and paya-
ble, and long before *Jackson* had sold or transferred it to *Bus-
sel*. The plea further avers that, at the time the debt was con-
tracted and the note given, and at the time of the discharge,
he and *Jackson* were both citizens of and resided in the
county of *Hamilton*, and state of *Ohio*; and that the debt was
contracted and the note made and delivered to *Jackson* there.
The plea further avers, that his body was discharged from im-
prisonment under or by virtue of the note or claim of *Jack-
son*; and that *Jackson*, as one of his creditors, became and was
entitled to his distributive share of the estate so assigned to the

Nov. Term,
1831.

Pugh
v.
Bussel.

trustees. The plea is demurred to and the demurrer sustained by the Court; and thereby several questions are raised.

The first point is, are those insolvent state laws repugnant to that part of the federal constitution, which vests exclusively in congress the power of establishing uniform laws on the subject of bankruptcy, throughout the *United States?*

The provisions of the constitution, which have a bearing on this point, have been by a celebrated and learned jurist collated and read thus:—"Congress shall have power to coin money, regulate the value thereof and of foreign coin; but no state shall coin money, emit bills of credit, or make any thing but gold and silver coin a tender in payment of debts, or pass any law impairing the obligation of contracts, but congress may establish uniform laws on the subject of bankruptcies." By this collation and transposition, it is at once seen that the constitution has left nothing unfinished. It prohibits the states from impairing the obligation of contracts, and provides a uniform medium for the payment of debts, and expressly prohibits the states from interfering with that medium. It also provides a uniform manner of discharging debts without payment, when congress shall deem it expedient to legislate on the subject. The states are not excluded from any power antecedently possessed by them, except in three cases: 1, when a power is granted to congress in exclusive terms; 2, when the states are expressly prohibited from exercising it, in express terms and in a specific form; 3, where a power is granted to congress, the cotemporaneous exercise of which by the states would be incompatible. The point, now under consideration, does not fall under either of those heads. The power of congress to establish "uniform laws on the subject of bankruptcy," as given by the constitution, is not exclusive of the states on the same subject, and until congress exercises that right, the states may constitutionally pass such laws, if they do not impair the obligation of contracts. And even if congress had exercised that right, the right of the states is not thereby extinguished, but only suspended so far as the two laws might conflict. It is said in the case of *Ogden* v. *Saunders*, 12 Wheaton, 369, that the fair exercise of that power by the states, does not necessarily involve a violation of the obligation of contracts, unless they pass beyond their own limits and the rights of their own citizens, and act upon

the rights of the citizens of other states, and come in collision with the judicial power granted to the *United States*, and thereby render their acts incompatible with the rights of the other states, and with the constitution of the *United States*. From this view of the case, it is clearly demonstrated that those laws are not necessarily repugnant to that part of the constitution, vesting in congress the exclusive power to establish uniform laws on the subject of bankruptcy.

The second point is, do those laws "impair the obligation of contracts," the power of passing which is expressly vested in congress?

The obligation of a contract is the law which binds the parties to perform their agreement. The Institutes and *Pothier* both call the obligation of a contract "the chain of the law." That law is the municipal law of the state where the contract is made, or where it is to be performed; and must govern it throughout whenever its performance is sought to be enforced. Lord *Mansfield* says, the general rule established by comity and the laws of nations, is, that the *lex loci* forms a part of the contract, and travels with it wherever the parties to it may be found, and is to be considered in expounding and enforcing it, unless the parties have otherwise agreed; as where it is to be executed in another state or country, in which case it is to be governed by the laws of the place where it is to be executed. 1 H. Black. 684.—2 Burr. 1078.—Stra. 733.—Black. Rep. 234, 258.—3 Dallas, 370.—1 Gallison, 169.—*Mather* v. *Bush*, 16 Johns. Rep. 233, 249. It is now a settled doctrine in all Courts, that the discharge of an insolvent debtor from arrest and imprisonment only, is not an infringement of the obligation of the contract. The imprisonment of the person of the debtor is no part of the law of the contract, but is simply a means of coercion: hence, those laws that only release the body of the insolvent from arrest and imprisonment are constitutional and valid. And it is also equally well settled, that a discharge of the insolvent's after-acquired property, is an infringement of the obligation of the contract, and those state laws which release not only the body of the insolvent, but also his after-acquired property, are laws impairing the obligation of contracts and are unconstitutional and void.

In the cases of *Baker* v. *Wheaton*, 5 Mass. Rep. 509, *Smith* v.

*Parsons,* 1 Ohio Rep. 236, *Smith* v. *Smith,* 2 Johns. Rep. 241, it is held that if the contract be made in the state where the discharge is had, between citizens of the state at the time of making the contract, it is good in all places against the citizens of that state and in all countries, because the laws of the state form a part of the contract, and the parties being citizens thereof are bound by the laws, they having assented thereto as a part of the body politic. Again, in the cases of *Mather* v. *Bush,* 1⸳8 Johns. Rep. 233, *Blanchard* v. *Russell,* 13 Mass. Rep. 1, *Hicks* v. *Hotchkiss et al.* 7 Johns. Ch. Rep. 297, it seems to be considered that if the insolvent law, under which the debtor is discharged, is not made and in force at the time of making the contract, it forms no part of the contract. It is, however, now settled by the cases of *Sturges* v. *Crowninshield,* 4 Wheaton, *Ogden* v. *Saunders;* 12 Wheaton, *M·Millan* v. *M·Neill,* 4 Wheaton, and *Mason* v. *Haile,* 12 Wheaton, that a state law that discharges only the person of the debtor from arrest and imprisonment, and not his after-acquired property, for debts contracted in the state between its own citizens, to be paid or performed in the state, is constitutional and valid, whether the debt was contracted before or after the passage of the insolvent law. The circumstance of the act being passed before or after the contract is made, makes no difference. And in the cases of *Clay* v. *Smith,* 3 Peters, 411, and *Sturges* v. *Crowninshield,* it appears to be considered that a state insolvent law, which discharges not only the person of the debtor from imprisonment, but also discharges after-acquired property, is valid, if the creditor makes himself a party to the proceedings which lead to the discharge in the state Court.

In surveying this doctrine in all its parts, and in endeavouring to arrive at a conclusion, warranted by the peculiar situation in which the several states stand in relation to the federal government, it is necessary to keep constantly in view, that the federal constitution is the paramount law of each state, and forms a part of the *lex loci,* and therefore enters into and forms a paramount part of every contract, and is equally binding and valid in every state. In a case in 7 Johns. Ch. Rep. Chancellor *Kent* says, that the *lex loci* must be constitutional law, or it is no law and forms no part of the contract; that the constitution of the *United States* is the supreme law of the land of all the states, and forms a part of all contracts made in any part of the *United*

*States;* and that any local law repugnant to the constitution can form no part of the same contract. And, again, in the case of the *Farmers and Mechanics' Bank of Pennsylvania* v. *Smith*, 6 Wheaton, 131, Judge *Marshall* says, that the circumstance of the parties being citizens of the same state, and the insolvent laws having been made and in existence prior to the making of the contract, and the discharge having taken place in the same state in the Courts thereof, makes no difference; that the constitution of the *United States* was made for the whole people of the Union, and is equally binding upon all the Courts and all the citizens.

The result of all the foregoing cases is, that a state law discharging the person of the debtor from imprisonment only, and not his after-acquired effects, for debts contracted in the state between its citizens, is constitutional and valid, whether the debt was contracted before or after the passage of the law. And that a state law, discharging not only the person of the debtor from imprisonment, but also discharging his after-acquired property, is a law impairing the obligation of contracts, and a discharge under it is not valid, unless the creditor makes himself a party to the proceedings which lead to the discharge in the state Court.

The third point is, have those state laws any operation *out of* the state, over contracts not made and to be carried into effect in the state between the citizens thereof; or have they any *effect* or operation on the citizens of other states?

The Courts in *England* maintain the doctrine, that it is a rule of universal obligation that the assignment of the bankrupt's effects, under a law of the country of the contract, is binding every where. It is perhaps settled in that country, that the discharge of a bankrupt shall be effectual against contracts of the state that gave the discharge, no matter what be the allegiance or country of the creditor. Their doctrine is, that the bankrupt law of the country is paramount in disposing of the rights of the bankrupt. The *United States* appear to have established a different doctrine. In the federal as well as the state Courts, where such cases have been adjudicated, it has been decided that, notwithstanding the bankruptcy of the debtor in *England*, or other foreign country, by their laws, his creditor here may levy an attachment on a debt due to the bankrupt in this coun-

try and appropriate it to his own use. And further, our Courts give the debts due to the bankrupt here, to satisfy a debt contracted in *England*, to the prejudice of the *English* law, which gives the same debt to the assignees of the bankrupt. *Ogden* v. *Saunders*, 12 Wheaton, 360.—*Harrison* v. *Sterry*, 5 Cranch, 298, 302.

In the case of *M⸰Millan* v. *M⸰Neill*, 4 Wheaton, 209, Judge *Marshall* says, that it is well settled that a discharge under a foreign law is no bar to an action on a contract made in this country. And in the case of *Buckner* v. *Finley* and *Van Lear*, 2 Peters, 590, the Court says that "for all national purposes embraced by the federal constitution, the states and the citizens thereof are one, united under the same sovereign authority, and governed by the same laws; but that in all other respects, the states are necessarily foreign to, and independent of each other." The same is said by the Court of Appeals in *Virginia* in the case of *Warder* v. *Arell*, 2 Wash. 298, where the Court states the laws as it respects a foreign country, and then adds, "the same principle applies to the different states of *America*." This principle, says Judge *Baldwin*, in the case of *Woodhull* and *Davis* v. *Wagner*, seems directly applicable to the insolvent laws of the states. Such laws are wholly unconnected with the federal relations of the states to the general government, where they do not impair the obligation of contracts; and discharges under them are, in other states, to be considered as made under foreign laws and subject to the same rules of decision. In the cases of *Watson* v. *Bourne*, 10 Mass. Rep. 337, *Baker* v. *Wheaton*, 5 Mass. 509, *Van Raugh* v. *Van Arsdaln*, 3 New-York T. R. 154, *Smith* v. *Smith*, 2 Johns. Rep. 241, *Ogden* v. *Saunders*, 12 Wheaton, 213, it is settled that a discharge of a debtor under a state insolvent law, is not valid against a citizen or creditor of another state, they not being parties or assenting to the laws. And, in the cases of *Emory* v. *Grenough*, 3 Dallas, 369, and *Proctor* v. *Moore*, Williams' Rep. 198, it is decided that if two citizens of the same state contract under the insolvent laws of the state, and, after the contract is made, one of them remove to another state, the one remaining in the state where the contract is made, cannot be discharged therefrom by the insolvent laws of the state, the other being a citizen of another state.

These cases, together with the cases of *Shaw* v. *Robbins*, note to 12 Wheaton, 369, *McMillan* v. *McNeill*, *Ogden* v. *Saunders*, *Harrison* v. *Sterry*, and *Robinson's Admr.* v. *Bank of Georgetown*, establish the doctrine beyond a controversy, that a discharge by a state law operates only on contracts made in the state between its own citizens, which are to be executed there; and that such laws have no operation out of the state, over contracts not made and to be carried into effect within the state, nor over the citizens of other states, unless they voluntarily make themselves parties to the proceedings which lead to a discharge in the state Courts.

The fourth and last point made in the case is, can the debtor when he has been constitutionally discharged in his own state under the laws thereof, plead that discharge in another state as a defence in bar against the imprisonment of his body, to an action brought on a debt from which he has been so discharged; and if he can so plead it, what is the form of the judgment to be rendered thereon?

In the cases of *Baker* v. *Wheaton*, *Smith* v. *Parsons*, and *Watson* v. *Bourne*, and the case of *Babcock* v. *Weston*, 1 Gall. Rep. 168, it is held to be a settled principle, that a legal discharge once obtained between citizens of the same state, is valid and binding in every state in the Union, on general principles; and much more so under the federal compact. These decisions on this point have, we believe, never been called in question. The Court is of opinion that the discharge now in question, of the debtor in the state of *Ohio*, is valid between the defendant and *Jackson*, and that the assignment of the note to *Bussel* does not alter or affect the case; and that therefore the plea of the defendant is well pleaded. In *England*, they have an insolvent law called the Lords' act, which discharges the person of the debtor from imprisonment, but does not discharge his after-acquired property. Under that act such pleas are common, and the form thereof well settled. See 2 Chitty's Pleading, 356, 357. The judgment in such cases is, that the plaintiff recover of the defendant his debt, damages, and costs, to be levied, not on the person of the defendant, but on his goods and chattels, lands and tenements. Bingham on Judgments and Executions, 328, 329.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c. (1).

51

*Smith*, for the plaintiff.

*Rariden*, for the defendant.

(1) The subjects, to which the opinion in the text relates, and the authorities connected with them, are very fully examined in Kent's Commentaries, 2d Ed. 1 Vol. pp. 419 to 423; 2 Vol. pp. 389 to 408.

The language of Judge *Story*, as to the authority of the states to pass insolvent laws discharging the obligation of contracts, is as follows:—"It is not doubted, that the states may pass insolvent laws, which shall discharge the person, or operate in the nature of a *cessio bonorum*, provided such laws do not discharge, or intermeddle with the obligation of contracts. Nor is it denied, that insolvent laws, which discharge the obligation of contracts, made antecedently to their passage, are unconstitutional. *Sturges* v. *Crowninshield*, 4 Wheat. R. 122; *Farmers and Mechanics' Bank* v. *Smith*, 6 Wheat. R. 131; *Ogden* v. *Saunders*, 12 Wheat. R. 213. But the question is, how far the states may constitutionally pass insolvent laws, which shall operate upon and discharge contracts, which are made subsequently to their passage. After the most ample argument it has at length been settled by a majority of the Supreme Court, that the states may constitutionally pass such laws operating upon future contracts. *Ogden* v. *Saunders*, 12 Wheat. R. p. 254 to 357." 3 Story's Comm. 252.

Respecting the contracts to which such state insolvent laws can rightfully apply, the same distinguished writer says:—"The result of the various decisions on this subject is, 1. That they apply to all contracts made within the state between citizens of the state. 2. That they do not apply to contracts made within the state between a citizen of a state, and a citizen of another state. 3. That they do not apply to contracts not made within the state. In all these cases it is considered, that the state does not possess a jurisdiction, co-extensive with the contract, over the parties; and therefore, that the constitution of the *United States* protects them from prospective, as well as retrospective legislation. *Ogden* v. *Saunders*, 12 Wheat. R. 358; *M'Millan* v. *M'Neill*, 4 Wheat. R. 209. Still, however, if a creditor voluntarily makes himself a party to the proceedings under an insolvent law of a state, which discharges the contract, and accepts a dividend declared under such law, he will be bound by his own act, and be deemed to have abandoned his extra-territorial immunity. *Clay* v. *Smith*, 3 Peters' Rep. 411." 3 Story's Comm. 256.