Lanzinger, J.
{¶ 1} In this appeal, we are asked to consider whether the ability to enforce an employee’s noncompete agreement transfers by operation of law to the surviving company when the company that was the original party to the agreement merges with another company. We hold that in this case, the language of the agreement dictates that the surviving company cannot enforce the agreement after the merger as if it had stepped into the shoes of the original company.
I. Facts

A. Background

{¶ 2} As a condition of their employment with the insurance-services company that eventually became known as Acordia of Ohio, Inc. (“Acordia, Inc.”),* [1] appellees Michael Fishel, Janice Freytag, Mark Taber, and Sheila Diefenbach (collectively, “the employees”) entered into noncompete agreements by which they agreed to forgo competition with Acordia, Inc. for two years after termination of their employment there. Fishel’s noncompetition agreement, for example, provides:
In consideration of my employment and its continuation by Frederick Rauh & Company (hereinafter; Company) I hereby covenant as follows:
A. For a period of two years following termination of employment with the company for any reason, I will not directly, indirectly, or through associa *346 tion with others solicit, write, accept or in any other manner perform any services relating to insurance business, insurance policies, or related insurance services for any of the following;
(1) Any individual or entity for whom the company has written, accepted, or in any other manner performed any services relating to insurance business, insurance policies, or related insurance services at any time while I was employed by the Company;
(2) Any individual or entity whose name was provided me as a prospective client at any time while I was employed by the Company.
B. For a period of two years following termination of employment with the company, I will not encourage nay [sic] other employees of the company, directly, indirectly, or through association with others to leave the Company’s employment.
(Emphasis added.) It is significant that this agreement of noncompetition does not contain language that extends to other employers, such as the company’s “successors or assigns.” The other employees signed nearly identical noncompetition agreements, the only differences consisting of formatting changes, the substitution of company names, and the dates. All agreements at issue were signed between 1993 and 2000.
{¶ 3} Frederick Rauh & Company became known as Acordia of Cincinnati, Inc. after its acquisition by Acordia, Inc. in 1994. Fishel began his employment with Frederick Rauh in 1993. Freytag and Taber began employment with Acordia of Cincinnati, Inc. before it merged with other Ohio companies to become Acordia of Ohio, Inc. in 1997. Diefenbach signed her noncompete agreement with the successor company, Acordia, Inc., in July 2000.
{¶ 4} Wells Fargo acquired Acordia, Inc. in May 2001. As part of this acquisition, the employees were required to complete several standard forms, including an acquisition-employment application, a United States Department of Justice employment-eligibility-verification form, a background-investigation authorization form, and a new-hire team-member acknowledgment form.
{¶ 5} Seven months later, Acordia, Inc. underwent a merger with appellant, Acordia of Ohio, L.L.C. (“the L.L.C.”). Following the merger, only appellant remained. The employees continued to work for the L.L.C. until August 2005, when they began employment with appellee Neace Lukens Insurance Agency, L.L.C. (“Neace Lukens”). They soon used their contacts to recruit multiple customer accounts from the L.L.C. to Neace Lukens. Within six months, 19 customers had transferred $1 million in revenue to Neace Lukens from the L.L.C.

*347
B. The Lawsuit

{¶ 6} The L.L.C. filed suit for injunctive relief and money damages in September 2005 against the employees, Neace Lukens, Neace and Associates Insurance Agency of Ohio, Inc., and Joseph Lukens, all appellees. The complaint claimed that the employees had violated their two-year noncompete agreement and would misappropriate the L.L.C.’s trade secrets. After reviewing the evidence presented at preliminary-injunction hearings, the trial court denied the L.L.C.’s motion for a preliminary injunction. The First District Court of Appeals affirmed the trial court’s decision, holding in part that a preliminary injunction was unwarranted because Acordia, Inc. and the employees did not intend to make the noncompete agreements assignable to successors such as the L.L.C. Acordia of Ohio, L.L.C. v. Fishel, 1st Dist. No. C-060292 (May 9, 2007). The trial court granted the employees’ motion for summary judgment, and the L.L.C. appealed, arguing in part that the noncompete agreements signed by the employees had transferred to the L.L.C.
{¶ 7} The court of appeals affirmed the trial court’s decision to grant summary judgment in favor of the employees. Acordia of Ohio, L.L.C. v. Fishel, 1st Dist. No. C-100071, 2010-Ohio-6235, 2010 WL 5275169. The court explained that while noncompete agreements transfer from the predecessor company to the successor company by operation of law after a merger, the employees’ noncompete agreements pertained only to the specific companies with which they had originally been employed. Id. at ¶ 13-20. Because the previous iterations of Acordia, Inc. had been merged out of existence more than two years before the employees left the L.L.C., the court of appeals concluded that the agreements had expired when the employees left and that the L.L.C. had no right to enforce them. Id. at ¶ 17-18.
{¶ 8} The L.L.C. appealed, and we accepted its proposition of law that states, “Pursuant to Ohio’s merger statutes, agreements between employees and employers that contain restrictive covenants are assets of the constituent company that transfer automatically by operation of law in a statutory merger from the constituent company to the surviving company and are enforceable by the surviving company according to the agreements’ original terms as if the surviving company were a party to the original agreements.” Acordia of Ohio, L.L.C. v. Fishel, 128 Ohio St.3d 1458, 2011-Ohio-1829, 945 N.E.2d 522. We reject that proposition and affirm the judgment of the court of appeals.
II. Legal Analysis
{¶ 9} The pivotal question is whether the noncompete agreements apply only to the original contracting employer or whether after the merger, the L.L.C. may enforce the noncompete agreements as if it had stepped into the shoes of those original contracting employers.

*348
A. The Contract Assets

{¶ 10} R.C. 1701.82 provides that a company’s assets transfer to the new company after a merger:
(A) When a merger or consolidation becomes effective, all of the following apply:
X * *
(3) The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each constituent entity * * *.
Because the statute specifies that the new company takes over all the previous company’s assets and property after the merger, it is clear that employee contracts transfer to the resulting company. In this case, the employees’ contracts came under the control of the L.L.C. after it merged with Acordia, Inc.
{IT 11} Nevertheless, although the L.L.C. assumed control-of the employees’ contracts after the merger, we agree with the First District Court of Appeals that the L.L.C. may not enforce the noncompete agreements as if the L.L.C. had stepped into the shoes of the company that originally contracted with the employees. Appellant’s proposed outcome would require a rewriting of the agreements. By their terms, the noncompete agreements are between only the employees and the companies that hired them.
{¶ 12} We have previously explained that when a merger between two companies occurs, one of those companies ceases to exist: “[A] merger involves the absorption of one company by another, the latter retaining its own name and identity, and acquiring the assets, liabilities, franchises and powers of the former. Of necessity, the absorbed company ceases to exist as a separate business entity.” Morris v. Invest. Life Ins. Co., 27 Ohio St.2d 26, 31, 272 N.E.2d 105 (1971). After the L.L.C. absorbed Acordia, Inc., the companies with which the employees agreed to avoid competition had ceased to exist. Because the noncompete agreements do not state that they can be assigned or will carry over to successors, the named parties intended the agreements to operate only between themselves — the employees and the specific employer. While the employment agreements transferred to the L.L.C. by operation of law pursuant to R.C. 1701.82, the wording within those agreements prevents the L.L.C. from enforcing a noncompetition period as if it were the original company with which the employees agreed not to compete. The L.L.C. acquired only the ability to *349 prevent the employees from competing two years after their employment terminated with the specific company named in the agreements.
{¶ 13} We hold that noncompete agreements that are transferred as a matter of law by a merger between companies are enforceable according to their terms.

B. Ohio merger law remains undisturbed

{¶ 14} The L.L.C. argues that a decision in favor of the appellees-employees would disturb the principle of corporate continuity established in merger law that constituent companies continue after the merger as a unified company vested with the identical contracts of the merged companies. Our decision, however, rests firmly within this framework. We emphasize that in accordance with R.C. 1701.82(A)(3), the surviving company possesses all assets and property and every interest in the assets and property of each constituent entity, including employment contracts and agreements.
{¶ 15} When contracts pass to the surviving company following merger, the surviving company obtains the same bargain agreed to by the preceding company, nothing more. Our decision today honors the noncompete agreement obtained by the employees’ original employers. The L.L.C. argues that as the surviving company, it needs these agreements because they protect the goodwill and proprietary information obtained in the merger; however, extending these agreements would run counter to their plain language, which specifies that they apply only to “the Company” with which the employees agreed to avoid competing, not the company’s successors. The L.L.C. could have protected its goodwill and proprietary information by requiring that the employees sign a new noncompete agreement as a condition of their continued at-will employment, similar to the way in which Wells Fargo required them to complete a number of employment forms as a condition of continued employment when it acquired Acordia, Inc.
{¶ 16} The L.L.C. also argues that we should follow the decisions of other jurisdictions. Our decision in this case, however, is premised upon our application of Ohio law to the particular agreement in this case. Our analysis of Ohio law and the noncompete agreements leads to the conclusion that although the employees’ noncompete agreements transferred automatically by operation of law to the L.L.C. following the merger, the merger did not alter the language of the agreements, and the noncompete agreements provided only that the employees would avoid competition during the two years following their termination from “the company” as defined by their respective noncompete agreements.

C. The employees did not violate the noncompete agreements

{¶ 17} Because the noncompete agreements transferred to the L.L.C. upon completion of the merger, the L.L.C. obtained the right to enforce the agree *350 ments as written. In other words, the employees were unable to compete with the L.L.C. for the two years following their termination from the “company” with which they each had signed their respective noncompete agreements.
{¶ 18} In this case, the termination, or complete severance of the employer-employee relationship, occurred when the company with which the employee agreed not to compete ceased to exist, an event triggered by merger. The triggering event for Fishel, Freytag, and Taber occurred when Acordia of Cincinnati, Inc. merged with other Ohio companies to become Acordia of Ohio, Inc. in December 1997. Consequently, their noncompete periods- expired in December 1999. The triggering event for Diefenbach occurred when Acordia of Ohio, Inc. merged with the L.L.C. in December 2001. Her noncompete period accordingly expired in December 2003. Because the employees’ noncompete periods had all expired before their resignations from the L.L.C. and subsequent employment with Neace Lukens, the L.L.C. had no legal right to enforce the noncompete agreements against the employees.
III. Conclusion
{¶ 19} The noncompete agreements between the employees and their original employers specified that they applied only to the specific companies that had originally hired each employee. Because the agreements made no provision for the continuation of the agreement upon any acquisition of the original company by another company, the agreements are not enforceable by the L.L.C. according to the agreements’ original terms past the two-year noncompete period agreed to by the employees and their original employers. We accordingly hold that the trial court properly granted summary judgment in favor of the employees.
Judgment affirmed.
O’Connor, C.J., and McGee Brown, J., concur.
Pfeifer, J., concurs in judgment only.
Lundberg Stratton, O’Donnell and Cupp, JJ., dissent.

. Initially known as Frederick Rauh & Company, Acordia, Inc. underwent a number of mergers, acquisitions, and reorganizations between 1993 and 2001. Appellant will be referred to as “the L.L.C.”