ACORDIA OF OHIO, L.L.C., APPELLANT, *v.* FISHEL ET AL., APPELLEES.

[Cite as *Acordia of Ohio, L.L.C. v. Fishel,*

133 Ohio St.3d 356, 2012-Ohio-4648.]

*On reconsideration—Acordia has the right to enforce noncompete agreements as if it had stepped into the shoes of the contracting companies—Judgment reversed, and cause remanded.*

(No. 2011-0163—Submitted July 10, 2012—Decided October 11, 2012.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-1000071, 2010-Ohio-6235.

ON MOTION FOR RECONSIDERATION.

_____

**LANZINGER, J.**

{¶ 1} This matter is before us on a motion for reconsideration filed by appellant, Acordia of Ohio, L.L.C. ("the L.L.C.") and supported by amici curiae, Ohio Chamber of Commerce, Ohio Chemistry Technology Council, USI Holdings Corporation, USI Midwest, Inc., Hylant Group, Inc., Cintas Corporation, and professors Sean K. Mangan and John A. Barrett Jr. A memorandum in opposition was filed by appellees Michael Fishel, Janice Freytag, Mark Taber, Sheila Diefenbach (collectively, "the employees"), Neace Lukens Insurance Agency, L.L.C., Neace & Associates Insurance Agency of Ohio, Inc., and Joseph T. Lukens. We granted the motion for reconsideration. *Acordia of Ohio, L.L.C. v. Fishel*, 132 Ohio St.3d 1485, 2012-Ohio-3334, 971 N.E.2d 962.

{¶ 2} In *Acordia of Ohio, L.L.C. v. Fishel*, 133 Ohio St.3d 345, 2012-Ohio-2297, 978 N.E.2d 814 ("*Acordia I*"), this court affirmed the judgment of the court of appeals. The lead opinion concluded that while the employees' noncompete agreements transferred by operation of law following merger with

the L.L.C., the language found in those agreements precluded the L.L.C. from enforcing them as if it had stepped into the shoes of the original contracting employer. *Id.* at ¶ 14, 19.

{¶ 3} After reviewing the memoranda presented to the court on reconsideration, we have determined that portions of the lead opinion in *Acordia I* should be clarified. We reassert that in accordance with R.C. 1701.82(A)(3), all assets and property, including employment contracts and agreements, and every interest in the assets and property of each constituent entity transfer through operation of law to the resulting company postmerger. We clarify the lead opinion by noting that certain language was, upon further consideration, erroneous. As a result, we now reverse the judgment of the court of appeals and remand the cause to the trial court so that it may determine whether the noncompete agreements are enforceable against the employees.

**I. Our Decision Is Limited to the Context of Noncompete Agreements**

{¶ 4} At the outset, we wish to emphasize that both the lead opinion in *Acordia I* and our decision today are limited in scope. In its motion for reconsideration, the L.L.C. worries that *Acordia I* may affect not only noncompetition agreements, but all other contracts transferred as a result of a merger. This is not the case. The proposition of law we accepted for review in this case stated:

> Pursuant to Ohio's merger statutes, agreements between employees and employers that contain restrictive covenants are assets of the constituent company that transfer automatically by operation of law in a statutory merger from the constituent company to the surviving company and are enforceable by the surviving company according to the agreements' original terms as if the surviving company were a party to the original agreements.

*Acordia of Ohio, L.L.C. v. Fishel*, 128 Ohio St.3d 1458, 2011-Ohio-1829, 945 N.E.2d 522.  Our review of this case was thus limited to the narrow legal issues of whether noncompete agreements transferred by operation of law to the surviving company and whether the surviving company could enforce the agreements as if it had stepped into the shoes of the original contracting company.  Both the lead opinion in *Acordia I* and our decision today are based upon considerations unique to noncompete agreements in the context of a merger and apply only to this narrow vein of cases.  Nothing in either opinion should be construed as addressing the effect of a merger on any other company contracts.

### II.  The Noncompete Agreements Transfer by Operation of Law

{¶ 5}  The lead opinion in *Acordia I* clearly stated that noncompete agreements transfer automatically to the surviving company by operation of law.  The lead opinion specifically provided, "We emphasize that in accordance with R.C. 1701.82(A)(3), the surviving company possesses all assets and property and every interest in the assets and property of each constituent entity, including employment contracts and agreements."  *Acordia I*, 133 Ohio St.3d 345, 2012-Ohio-2297, 978 N.E.2d 814, at ¶ 14.  We reemphasize this principle today.  Ohio merger law remains undisturbed, and employee noncompete agreements transfer to the surviving company after a merger has been completed pursuant to R.C. 1701.82(A)(3).

### III.  Portions of the Lead Opinion in *Acordia I* Were Erroneous

{¶ 6}  After reviewing the parties' memoranda and giving further consideration to this case, we conclude that portions of the lead opinion in *Acordia I* require correction.  Specifically, a portion of analysis found in *Acordia I*'s lead opinion was based upon a misreading of language from a previous case that "a merger involves the absorption of one company by another, the latter retaining its own name and identity, and acquiring the assets, liabilities, franchises

and powers of the former. Of necessity, the absorbed company ceases to exist as a separate business entity." *Morris v. Invest. Life Ins. Co.*, 27 Ohio St.2d 26, 31, 272 N.E.2d 105 (1971). Based on this language, the lead opinion in *Acordia I* concluded that the companies with which the employees had signed noncompete agreements ceased to exist following the merger. *Acordia I* at ¶ 12. The lead opinion further reasoned that because the noncompete agreements do not state that they can be assigned or will carry over to the contracting company's successors, the agreements' specific language indicated that the contracting parties intended that the noncompete agreements would operate only between themselves—i.e., the employee and the specific employer. *Id.*

{¶ 7} Upon further consideration, we now recognize that the lead opinion's reading of *Morris* was incomplete. While *Morris* does state that the absorbed company ceases to exist as a *separate* business entity, the opinion does not state that the absorbed company is completely erased from existence. Instead, the absorbed company becomes a part of the resulting company following merger. The merged company has the ability to enforce noncompete agreements as if the resulting company had stepped into the shoes of the absorbed company. It follows that omission of any "successors or assigns" language in the employees' noncompete agreements in this case does not prevent the L.L.C. from enforcing the noncompete agreements.

{¶ 8} Based on the foregoing clarification, we note that any language in the lead opinion in *Acordia I* stating that the L.L.C. was unable to enforce the employees' noncompete agreements as if it had stepped into the original contracting company's shoes or that the agreements were required to contain "successors and assigns" language for the L.L.C. to have the power to enforce the agreements was erroneous.

### IV. The Reasonableness of the Noncompete Agreements

{¶ 9}   While we now hold that the L.L.C. may enforce the noncompete agreements as if it had stepped into each original contracting company's shoes, we agree with Justice Cupp's assertion in his dissent in *Acordia I* that even though the agreements transfer to the L.L.C. by operation of law, the transfer does not "foreclose appropriate relief to the parties to the noncompete agreement under traditional principles of law that regulate and govern noncompete agreements." *Acordia I*, 133 Ohio St.3d 345, 2012-Ohio-2297, 978 N.E.2d 814, at ¶ 36 (Cupp, J., dissenting).  In other words, the employees still may challenge the continued validity of the noncompete agreements based on whether the agreements are reasonable and whether the numerous mergers in this case created additional obligations or duties so that the agreements should not be enforced on their original terms. *Id.* at ¶ 39 (Cupp, J. dissenting).

{¶ 10} We have held that "[a] covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests." *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975), paragraph one of the syllabus. Furthermore, "[a] covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Id.*, paragraph two of the syllabus.  In determining the reasonableness of a noncompete agreement, we have stated that courts must determine whether the restraints and resultant hardships on the employee exceed what is reasonable to protect the employer's legitimate business interests. *Rogers v. Runfola & Assoc., Inc.*, 57 Ohio St.3d 5, 8, 565 N.E.2d 540 (1991).

{¶ 11} Therefore, while we hold today that the L.L.C. has the right to enforce the employees' noncompete agreements as if it had stepped into the shoes

of the original contracting companies, we recognize that whether the noncompete agreements are reasonable remains an open question. Because the lower courts have not ruled on the reasonableness of the noncompete agreements, we will not address that issue in this decision, and we now remand the case to the trial court so that it may consider the issue.

## V.  Conclusion

{¶ 12} Recognizing that both the lead opinion in *Acordia I* and our opinion today apply only in the limited context of employee noncompete agreements, we reassert that employee noncompete agreements transfer by operation of law to the surviving company after merger. The language in *Acordia I* stating that the L.L.C. could not enforce the employees' noncompete agreements as if it had stepped into the original contracting company's shoes or that the agreements must contain "successors and assigns" language in order for the L.L.C. to enforce the agreements was erroneous. We hold that the L.L.C. may enforce the noncompete agreements as if it had stepped into the shoes of the original contracting companies, provided that the noncompete agreements are reasonable under the circumstances of this case. We accordingly reverse the judgment of the court of appeals and remand this cause to the trial court so that it may determine the reasonableness of the noncompete agreements.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

_____

**O'DONNELL, J., concurring.**

{¶ 13} I concur with the majority's decision to reconsider this matter. A noncompete agreement existing between an employee and a constituent entity is

an asset of that entity and, in a statutory merger, transfers by operation of law to the surviving entity and is enforceable by the surviving entity as if it were a signatory to the original agreement. As a result of a series of successive corporate mergers, Acordia of Ohio, L.L.C., acquired the noncompete agreements at issue in this case by operation of law, along with the ability to enforce them without regard to assignment. The reasonableness of those agreements is not at issue before this court.

{¶ 14} Accordingly, I concur in the judgment to reverse the judgment of the court of appeals and to remand this matter for further proceedings.

### A Noncompete Agreement Is an Asset that
### Passes by Operation of Law

{¶ 15} R.C. 1701.82(A)(3) states, "The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority * * * of each constituent entity, and * * * all obligations belonging to or due to each constituent entity" without reversion or impairment. R.C. 1705.39, which pertains to mergers between corporations or partnerships and limited liability companies, confers the same vestments on the surviving entity.

{¶ 16} R.C. 1701.82(A)(1) states that a constituent entity ceases to exist as a separate business in a merger; but that statute also provides several exceptions to this general rule, including when "a conveyance, assignment, transfer, deed, or other instrument or act is necessary to vest property or rights" in a surviving entity. In those instances, "the existence of the constituent entities and the authority of their respective officers, directors, general partners, or other authorized representatives is continued notwithstanding the merger or consolidation." *Id.; compare* R.C. 1705.39(A)(1) (contains similar exceptions).

{¶ 17} R.C. 1701.82 and 1705.39, by their operation, vest all the assets and obligations of a constituent entity in the surviving entity without reversion or

impairment. When we examined the effect of R.C. 1701.82 in the context of a stock purchase agreement entered into by a constituent entity, we held that a properly executed contract is binding on the surviving entity "in a merger unless the agreement explicitly sets forth that in the event of a merger, the obligations of the constituent corporation cease to exist." *ASA Architects, Inc. v. Schlegel*, 75 Ohio St.3d 666, 665 N.E.2d 1083 (1996), syllabus. In that case, the agreement made no provision for what would happen in the event of a merger, the surviving entity in the merger assumed full responsibility for all obligations of the constituent entity, and the parties did not enter into a new agreement following the merger. *Id.* at 673. Based on those factors, we determined that the contractual obligations of the constituent entity flowed, *by operation of law*, to the surviving entity. *Id.* These same considerations are present here and compel a similar conclusion.

{¶ 18} More than 180 years ago, we recognized that contracts are subordinate to statutes, and the latter "may regulate them, prescribe their form, their effect, and the mode of their discharge, and every contract is supposed to be made with reference to those laws." *Smith v. Parsons*, 1 Ohio 236, 238-239 (1823). And almost 100 years ago, we construed railroad-consolidation statutes that contained language similar to that in R.C. 1701.82 and determined that in a merger, "the consolidated company merely steps into the shoes of the constituent companies." *Marfield v. Cincinnati, D. & T. Traction Co.*, 111 Ohio St. 139, 161-164, 144 N.E. 689 (1924). The appellate court's determination that the terms of the agreements preclude Acordia of Ohio, L.L.C., from their enforcement thus runs counter to our century-old precedent.

{¶ 19} We applied this analysis more recently, rejecting the argument that a change in corporate structure invalidated noncompete agreements originally entered into by the constituent entity. *Rogers v. Runfola & Assoc.*, *Inc.*, 57 Ohio St.3d 5, 7, 565 N.E.2d 540 (1991). There, the employees signed noncompete

agreements while working for a sole proprietorship, which subsequently changed its business structure to that of a corporation, during their tenure of employment. *Id*. In determining that the noncompete agreements were valid and could be enforced by the newly incorporated business, which had acquired all the assets and liabilities of the sole proprietorship, we were guided in our analysis by the fact that "[o]nly the legal structure of the business changed, not the business itself," *id*., and that the change in corporate structure did not place additional burdens on the "duties or daily operations" of the employees. *Id*. at 9. This is the same circumstance that we confront in this case.

**{¶ 20}** Here, Acordia of Ohio, L.L.C., acquired the noncompete agreements from Wells Fargo, which in turn had acquired them through a series of corporate mergers. Those mergers, which began with Frederick Rauh & Company, did not affect the nature of the business—the sale of insurance securities; thus, the mergers changed only the corporate structure of the business operation. Similarly, there is no evidence or claim in this record that additional employment duties or obligations resulted from these mergers. Thus, *Rogers* supports the conclusion that Acordia of Ohio, L.L.C., is entitled to enforce the agreements it acquired in the merger that passed to it by operation of law.

**{¶ 21}** Other courts construing similar statutes have reached this same result. For example, in *Corporate Express Office Prods., Inc. v. Phillips*, the Supreme Court of Florida held that a surviving entity in a "merger assumes the right to enforce a noncompete agreement entered into with an employee of the merged corporation by operation of law, and no assignment is necessary * * * because in a merger, the two corporations in essence unite into a single corporate existence." 847 So.2d 406, 414 (Fla.2003). And in *Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, the Supreme Court of Nebraska reached the same result when it construed a Maryland statute, concluding that a surviving entity could enforce a noncompete agreement acquired in a merger because it was an

asset that passed by operation of law, and no assignment was necessary. 275 Neb. 642, 650-652, 748 N.W.2d 626 (Neb.2008). *See also Natl. Instrument, L.L.C. v. Braithwaite*, Md.Cir.Ct. No. 24-C-06-004840, 2006 WL 2405831, *3 (June 5, 2006), (identifying cases in which courts construed merger statutes that vested in surviving entities the assets of a constituent entity without further act or deed, and which held that surviving entities could enforce noncompete agreements because they were business assets that passed by operation of law and not by assignment).

### Conclusion

{¶ 22} Pursuant to R.C. 1701.82 and 1705.39, statutes governing mergers in Ohio, assets pass to a surviving entity by operation of law. It has been understood for more than a century that contracts are subordinate to statutes and that the latter also determine the effect of merger contracts and their mode of discharge. The agreements here automatically vested in Acordia of Ohio, L.L.C., without reversion or impairment, because they are assets that passed by operation of law, and Acordia of Ohio, L.L.C., can enforce the noncompete agreements as if it were a signatory to them. Because the surviving entity in a merger acquires the right to enforce a noncompete agreement entered into by a constituent entity by operation of law, neither assignment nor consent is necessary to effectuate that result.

{¶ 23} In my view, it is not necessary to direct the trial court to determine the reasonableness of the noncompete agreements; although a trial court has the obligation to review a noncompete agreement for reasonableness, that issue has not been presented as a proposition of law, nor is it otherwise briefed or at issue before the court. Accordingly, I concur in the judgment to reverse the judgment of the court of appeals and to remand this matter for further proceedings consistent with this opinion.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

10

**PFEIFER, J., dissenting.**

{¶ 24} This case has been properly decided three separate times. The trial court had it right, the court of appeals had it right, and this court had it right the first time. I did not vote to accept jurisdiction, did not vote to reconsider the case, and remain convinced that this court should not have accepted jurisdiction or granted reconsideration. Even though I believe that this case is being incorrectly decided, the good news is that on remand, the lower courts are likely to reach the same sensible conclusions that they reached when they first encountered this case.

{¶ 25} The common law and judicial policy have long disfavored noncompete agreements. Starting with *Dyer's Case*, Y.B. 2 Henry 5, fol. 5, pl. 26 (C.P.1414), noncompete agreements were prohibited. Since the early 18th century, however, many jurisdictions have allowed noncompete agreements to be enforced when they are reasonable. *Mitchel v. Reynolds*, 1 P.Wms. 181, 24 Eng.Rep. 347 (Q.B.1711); Harlan M. Blake, *Employee Agreements Not to Compete*, 73 Harv.L.Rev. 625, 630 (1960). The Supreme Court of the United States stated:

> It is a well-settled rule of law that an agreement in general restraint of trade is illegal and void; but an agreement which operates merely in partial restraint of trade is good, provided it be not unreasonable and there be a consideration to support it. In order that it may not be unreasonable, the restraint imposed must not be larger than is required for the necessary protection of the party with whom the contract is made.

*Oregon Steam Navigation Co. v. Winsor*, 87 U.S. 64, 66-67, 20 Wall. 64, 22 L.Ed. 315 (1873).

11

**{¶ 26}** Noncompete agreements remain in disfavor and tend to be strictly construed against the employer. *Columbia Ribbon & Carbon Mfg. Co., Inc. v. A–1–A Corp.,* 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 369 N.E.2d 4 (1977); *Grant v. Carotek, Inc.*, 737 F.2d 410, 411-412 (4th Cir.1984) (applying Virginia law). "In Minnesota, employment noncompete agreements 'are looked upon with disfavor, cautiously considered, and carefully scrutinized.' " *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn.1998), quoting *Bennett v. Storz Broadcasting*, 270 Minn. 525, 533, 134 N.W.2d 892 (1965). In certain respects, noncompete agreements are similar to indentured servitude. *See* Blake at 632 (common law disfavor of noncompete agreements was aimed at preventing employers from violating the underlying precepts of the apprenticeship system). In most respects, noncompete agreements are inimical to the free-enterprise system.

**{¶ 27}** The policy considerations that affect whether a particular noncompete agreement is reasonable and enforceable are explained by Michael J. Garrison and John T. Wendt:

> As a matter of public policy, courts have traditionally looked upon agreements not to compete with disfavor. Such restrictions on employees were prohibited under the early English common law; however, over time, the common law prohibition against noncompete agreements loosened. The courts recognized that such agreements can be legitimate if they serve business interests other than the restriction of free trade. Thus, agreements not to compete ancillary to an employment relationship have been permitted, subject to a reasonableness requirement.
>
> The common law reasonableness approach is an attempt to balance the conflicting interests of employers and employees as well as the societal interests in open and fair competition.

Employers have a legitimate interest in preventing unfair competition through the misappropriation of business assets by former employees. On the other hand, employees have a countervailing interest in their own mobility and marketability. Society has interests in maintaining free and fair competition and in fostering a marketplace environment that encourages new ventures and innovation. There is a complementary public interest in preventing employers from using their superior bargaining position to unduly restrict labor markets. Given these competing interests, the common law approach allows employee noncompete agreements but imposes significant limits on restrictive covenants to assure that they are not overly burdensome to employees and harmful to the marketplace.

Under the common law approach, the employer must demonstrate a legitimate commercial reason for any agreement not to compete to ensure that the agreement is not a naked attempt to restrict free competition. Merely preventing competition from a former employee is not a sufficient justification for a noncompete agreement, even if the employee received training or acquired knowledge of a particular trade during his employment. Employees are entitled to use the general skills and knowledge acquired during their employment in competition with their former employer. An employer must demonstrate "special circumstances" that make the agreement necessary to prevent some form of unfair competition.

Traditionally, the courts recognized two primary interests as legitimate justifications for a noncompete agreement: the

employer's interests in protecting the goodwill of the business and in protecting its trade secrets.

(Footnotes omitted.)   Garrison & Wendt, *The Evolving Law of Employee Noncompete Agreements:  Recent Trends and an Alternative Policy Approach*, 45 Am.Bus.L.J. 107, 114-116 (2008).

{¶ 28}  In Ohio,

"[a] covenant not to compete which imposes reasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests.  * * * [Such a] covenant is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public."

*Rogers v. Runfola & Assoc., Inc.*, 57 Ohio St.3d 5, 8, 565 N.E.2d 540 (1991), quoting *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544, paragraphs one and two of the syllabus.

{¶ 29}  In this case, the noncompete agreement is an undue infringement on free enterprise.   The agreement unfairly protects the employer from competition from its former employees.   The employer's trade secrets and customer list are already legitimately protected; the noncompete agreement does not protect them further.  The principal purposes undergirding the enforcement of a noncompete agreement, both generally and in Ohio, are not applicable.  Under the circumstances of this case, I conclude that the noncompete agreement is unreasonable and, therefore, that it should not be enforced.  I would so conclude now, based on the record before us, without remanding the case.

{¶ 30} In *Dyer's Case*, Y.B. 2 Henry 5, fol. 5, pl. 26, the court concluded that the noncompete agreement "is void because the condition is against the common law, and by God, if the plaintiff were present he should rot in gaeol till he paid a fine to the King." That was justice.

_____

Katz, Teller, Brant & Hild, James F. McCarthy III, and Laura Hinegardner, for appellant.

Denlinger, Rosenthal & Greenberg, L.P.A., and Mark E. Lutz, for appellees.

Taft Stettinius & Hollister, L.L.P., W. Stuart Dornette, John B. Nalbandian, and Ryan M. Bednarczuk, urging reconsideration for amici curiae Ohio Chamber of Commerce and Ohio Chemistry Technology Council.

Beckman Weil Shepardson, L.L.C., and Peter L. Cassady, urging reconsideration for amici curiae USI Holdings Corporation and USI Midwest, Inc.

Keating Muething & Klekamp and Robert E. Coletti, urging reconsideration for amicus curiae Cintas Corporation.

Michelle Lafferty, urging reconsideration for amicus curiae Hylant Group, Inc.

Manley Burke, L.P.A., and Timothy Burke, urging reconsideration for amici curiae Sean K. Mangan and John A. Barrett Jr.

_____